**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| C.A.R.V., | Case No. 1:25-cv-01395-JLT-SKO |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION TO ENFORCE |
| v. | (Doc. 15) |
| MINGA WOFFORD, ET AL., | |
| Respondents. | |

## I.    INTRODUCTION

C.A.R.V. is a federal immigration detainee proceeding through counsel in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Currently pending before the Court is Petitioner's motion to enforce this Court's preliminary injunction issued on November 3, 2025. (*See generally* Docs. 14, 15.) For the reasons explained in further detail below, the Court **DENIES** Petitioner's request to enforce the Court's preliminary injunction.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen and national of Nicaragua who entered the United States in 2021 and was released on parole after being encountered at the border by the Department of Homeland Security. (Doc. 14 at 2.) He has since resided in Daly City, California, maintained gainful employment, and became engaged to a U.S. citizen approximately six months before his most

recent detention. (*Id.*) His fiancé gave birth to their first child in November 2025. (Doc. 20 at 3.)

Petitioner has a criminal record stemming from alcohol abuse. (Doc. 14 at 2-3.) On June 10, 2023, Petitioner was arrested for violation of California Vehicle Code § 23152(a), Driving under the Influence of Alcohol; Cal. Veh. Code § 23152(b), DUI Alcohol/0.08 percent or more; and Cal. Veh. Code § 12500(a), Driving without a Valid License. (*Id.*) Petitioner pled no contest to the Cal. Veh. Code § 23152(b) (DUI Alcohol/0.08 percent or more) and subsequently attended a state mandated program for recovery (Doc. 15-3 at 82-83) and completed a County of San Mateo Sherrif's Work Program (*Id.* at 78.) Over a year later, on October 28, 2024, Petitioner was cited for violation of Cal. Veh. Code § 2322(a) Possession of an open container while driving. (Doc. 4 at 3.) Petitioner pled guilty to the CVC § 2322(a) violation. (*Id.*)

On September 15, 2025, while reporting to the Immigration and Customs Enforcement Field Office in San Francisco, Petitioner was arrested for violating conditions of his parole due to his DUI and open container citation. (*Id.*)

On October 20, 2025, Petitioner filed both a petition for writ of habeas corpus (Doc. 1) asserting that DHS violated his Fifth Amendment right to due process by re-detaining him without a "pre-deprivation hearing" to determine whether such detention is warranted, as well as a motion for a temporary restraining order requesting immediate release and other injunctive relief. (Doc. 2.) On November 3, 2025, this Court converted Petitioner's motion for a temporary restraining order into a preliminary injunction (hereinafter "PI Order"), partially granting Petitioner's requested relief by ordering DHS to provide Petitioner with a constitutionally compliant bond hearing before an Immigration Judge to determine whether Petitioner's detention is warranted.[1] (Doc. 14 at 20-21.) In accordance with the Fifth Amendment's Due Process Clause,

---

[1] The Court's November 3, 2025 preliminary injunction order reads as follows:

> Petitioner SHALL be provided a *substantive* bond hearing **no later than November 14, 2025** at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released. At any such hearing, the Government **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner **SHALL** be allowed to have counsel present.

(Doc. 14 at 20-21.)

the order stated that the Government bears the burden of proof by clear and convincing evidence to show that Petitioner's detention is warranted. (*Id.*)

DHS moved for a bond redetermination hearing before the Adelanto Immigration Court, and on November 7, 2025, a custody redetermination hearing was held before Immigration Judge Katie G. Mullins via videoconferencing. (Doc. 15 at 9.) DHS submitted into evidence Petitioner's RAP sheet detailing his criminal history and a copy of Petitioner's Notice to Appear issued in the collateral removal proceeding before the Immigration Court. (Doc. 15-3 at 2.) Petitioner submitted over 100 pages of evidence in support of his lack of current dangerousness and flight risk, including letters from various friends, family, and employers, a psychological evaluation of the Petitioner, documents relating to Petitioner's employment and residency, medical records relating to his fiancé's pregnancy, certificates of programming and courses taken by Petitioner, and this Court's PI Order. (*Id.*) Petitioner's fiancé and his marriage and family therapist were present and available to testify on Petitioner's behalf at the hearing, but the IJ declined to hear any testimony, including any testimony made by Petitioner.[2] (Doc. 15 at 10.)

The IJ's written memorandum followed on November 20, 2025 (Doc. 15-3 at 2-6). At the outset of the memo, the IJ acknowledged that this Court required an individualized bond hearing at which DHS "shall bear the burden of establishing by clear and convincing evidence, that [Petitioner] poses a danger to the community or a risk of flight." (Doc. 15-3 at 2.) Prior to explaining the basis for the bond decision, the IJ recounted the evidence submitted by both Petitioner and DHS and ruled on Petitioner's objections to the admission of the evidence of his RAP sheet. Though the IJ did not agree with Petitioner's counsel's evidentiary argument to exclude this evidence, she ruled that it would be afforded less weight "in an abundance of caution." (*Id.* at 3.)

Preceding her analysis, the IJ invoked her "'extremely broad discretion' in deciding whether to release a respondent on bond" and in determining any specific bond amounts. (Doc.

---

[2] The IJ wrote "Pursuant to Chapter 9.3(e)(6) of the Immigration Court Practice Manual, the Court exercised its discretion to not elicit to hear testimony from any witnesses (including [Petitioner]). (Doc. 15-3 at 3.)

150-3) (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006)). Such an inquiry, the IJ noted, was to be guided by a list of relevant factors set forth in *Guerra*,[3] including "[Petitioner's] criminal record activity, the recency of such activity, and the seriousness of the offense." (*Id*.) Under *Guerra*, an "Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." (*Id*.) (citation omitted.)

In assessing whether Petitioner is current a danger to the community, the IJ considered the "recency, extent, and seriousness" of his criminal record, specifically highlighting the fact that Petitioner's DUI arrest occurred less than two years after entering the country in 2021 and that Petitioner seemingly appeared to consume alcohol even after his DUI arrest. (*Id*. at 4.) She cited Board of Immigration Appeals case law characterizing the act of drinking while driving as "an extremely dangerous crime" and "a significant adverse consideration in bond proceedings." (*Id*.) (citations omitted.) Based on this evidence, the IJ was "left with significant concerns about the further deleterious impact that [Petitioner] would have on the safety and security of the community" if released on bond. (*Id*. at 5.) The IJ acknowledged that Petitioner suffered from psychological conditions that may have impacted his behavior but countered that "the reasons for his commission of the DUI do not negate the dangerousness of his conduct." (*Id* at 4-5.) The IJ commented that the evidence submitted by Petitioner to show his rehabilitation efforts—including letters of support that predominantly addressed Petitioner's general character and not his rehabilitation—"left [the court] to speculate as to the nature of [these] program[s]" and to the true extent of his rehabilitation. (*Id*.) As a result, the IJ found that "the Department has proven by clear and convincing evidence that Petitioner's release would pose a danger to the community" and that no amount of bond was appropriate in this case. (*Id*.)

The IJ made additional findings that "the Department [had] also established by clear and

---

[3] *Guerra* discusses nine factors relevant to the bond determination, namely: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. 24 I. & N. Dec. at 40.

convincing evidence that [Petitioner] is such a significant flight risk that no bond or non-monetary release conditions could sufficiently mitigate that risk." (*Id.* at 6.) The IJ's flight risk analysis considered (1) that Petitioner has only been in the country for a short period of time (four years), (2) that his entry was unlawful, and (3) that Petitioner is currently seeking humanitarian protection in the United States in the form of asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.*) As to Petitioner's asylum application, the IJ was "left entirely to speculate regarding the merits of his claims and his likelihood of success on the merits of those applications, as he has provided no meaningful evidence on this topic in this bond proceeding." (Doc. 15 -3 at 6.) The IJ cited multiple BIA cases permitting courts to consider the likelihood that relief from removal will be granted in evaluating a request for bond, including one case holding that noncitizens with a greater likelihood of being granted relief from deportation have a greater motivation to appear for a deportation hearing than those who, based on a criminal record or otherwise, have less potential of being granted such relief. (*Id.*) Said plainly, noncitizens with criminal records are less likely to appear for future immigration hearings and therefore constitute a greater flight risk. Accordingly, the IJ denied bond on this additional independent basis.

Following the IJ's denial of bond, Petitioner filed an appeal of the IJ's determination to the BIA but has still not yet received a briefing schedule on appeal. (Doc. 15 at 10.) Petitioner remains in immigration custody, at Mesa Verde Detention Center in Bakersfield, California.

On November 23, 2025, Petitioner filed a motion to enforce the Court's PI Order seeking immediate release from custody. (Doc. 15 at 9.) Petitioner contends that the IJ's decision denying Petitioner bond failed to comply with the Court's PI Order because she failed to demonstrate impartiality, misapplied the law and did not hold the government to its heavy burden of proof. (*See generally* Doc. 15.)

In their opposition, Respondents argue that Petitioner's motion to enforce is premature because Petitioner "has pursued his recourse of filing and administrative appeal of the immigration judge's order…and he must await the outcome of that appeal." (Doc. 19 at 2.)

///

5

### III.    LEGAL STANDARD

A district court has continuing jurisdiction to enforce its injunction. *See Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir.1994). The party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a specific provision of the court's order. *Kia America, Inc. v. Rally Auto Group, Inc.*, Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 at *2 (C.D. Cal. Oct. 20, 2022) (citing *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed in order to provide sufficient notice to the party being enjoined. *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995). "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id.* (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.' " *Quan v. Barr*, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d 976, 981 (9th Cir. 2017).

### IV.    ANALYSIS

#### A.  Exhaustion of Administrative Remedies

Respondents argue that Petitioner's motion to enforce should be denied as premature pending the resolution of his appeal to the BIA. (Doc. 19 at 1.)[4] Petitioner contends that the Court

---

[4] Respondents also argue that the record "before the Court presently is incomplete and inadequate for the

does not have to await the outcome of the BIA appeal before enforcing its preliminary injunction order. (Doc. 20 at 2-5.) Alternatively, Petitioner requests the Court waive any exhaustion requirements because he will suffer irreparable injury, there is an inadequate administrative remedy, and because administrative proceedings are futile due to the lengthy resolution process.[5] (*Id.*)

As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted).

As mentioned previously, any alleged exhaustion requirement in this case must fully contend with the Court's continuing authority to enforce its own injunction. *See Crawford v.*

---

substantive review of the immigration judge bond decision that the Petitioner seeks." (Doc. 19 at 2.) However, the parties have provided the documents and evidence considered by the IJ (Doc. 15-3), which the Court finds are sufficient to answer the legal question presented whether the IJ applied the proper burden of proof at the bond hearing. Therefore, the Court declines to address Respondents' argument further or grant an extension of time to obtain a transcript of the bond hearing.

[5] According to petitioner's immigration counsel, appeals of this nature typically take three to six months to be resolved. (Doc. 15 at 10.)

*Honig*, 37 F.3d 485, 488 (9th Cir.1994). Petitioner notes that some courts in the Ninth Circuit have determined that administrative exhaustion is not required to enforce a prior order, citing *Mau v. Chertoff*, 562 F. Supp. 2d 1107 (S.D. Cal. 2008), *Judulang v. Chertoff*, 562 F. Supp. 2d 1119 (S.D. Cal. 2008), and *Sales v. Johnson*, 2017 WL 6855827 (N.D. Cal. Sept. 20, 2017). Respondents cite no authority for the argument that Petitioner must exhaust administrative remedies before the Court can enforce its own judgement.[6]

The Court in *Perez v. Wolf*, 445 F. Supp. 3d 275 (N.D. Cal. 2020), encountered a similar exhaustion argument in the context of a detainee's request to enforce a prior writ of habeas corpus under § 2241. Like Petitioner, the detainee in *Perez's* BIA appeal had neither been fully briefed nor heard at the time at which he sought relief from the district court to enforce its prior order. Furthermore, the petitioner in *Perez* partially relied on *Mau, Judulang,* and *Sales* to argue that he need not exhaust his direct appeals. *See Perez,* 445 F. Supp. 3d at 284. The Court finds the legal analysis and conclusion laid out succinctly in *Perez* to apply:

> Both *Mau* and *Judulang* support their analysis with [*Harvest v. Castro*, 520 F.3d 1055 (9th Cir. 2008), *amended and superseded* by 531 F.3d 737 (9th Cir. 2008)]; *Sales* finds that exhaustion was not required because the government cited no precedent saying that a petitioner seeking to enforce a court's earlier order must exhaust available direct appeals… the *Harvest* opinion…requires district courts to follow statutes, rules, and precedents when enforcing prior equity-based orders. *Harvest* states that while "a district court can modify its conditional writ ... [and] has continuing jurisdiction over [the writ]," it may not "ignore ... statutes, rules, and precedents." *Harvest*, 531 F.3d at 745 (quotation marks and citations omitted) (second alteration in original).
>
> The Ninth Circuit has made clear that "[l]ower courts are, ... not free to address the underlying merits [of a habeas action] without first determining [whether] the exhaustion requirement has been satisfied." *Laing*, 370 F.3d at 998. Hence, here, where Petitioner's claim is based on 28 U.S.C. § 2241, precedent requires exhaustion. In other words, because habeas jurisdiction forms this Court's ability to even hear Petitioner's motion, the Court must comply with the applicable precedent that requires a petitioner to either exhaust available direct appeals or show that they are excused from exhaustion. The Court is hesitant to join other courts in carving-out a "prior order" exception to the exhaustion rule without a

[6] In their opposition, Respondents cite *Castro-Cortez v. I.N.S.*, 239 F.3d 1037 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006), in which the Ninth Circuit considered whether the Court of Appeals had jurisdiction to review directly claims that INS orders to reinstate prior orders of removal against aliens who reentered United States, violated aliens' constitutional rights and were not authorized by INA. The Court is unconvinced that this case cautions against deciding the motion now before the Court.

clearer indication from the Ninth Circuit that such an exception is appropriate. Accordingly, unlike…*Mau*, *Judulang*, and *Sales*, this Court holds that a petitioner seeking to enforce an earlier writ of habeas corpus must still exhaust (or be excused from exhausting) available direct appeals.

*Perez,* 445 F. Supp. 3d at 285-286. As to the Court's authority to waive the exhaustion requirement, given that Petitioner here has satisfied least one of the *Laing* factors applies to excuse exhaustion,[7] the Court holds that the requirement of exhaustion is excused. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

**B. Application of the Clear and Convincing Standard**

The Court first considers Petitioner's claims that the IJ applied the incorrect legal standard at his bong hearing and impermissibly shifted the burden of proof to Petitioner. (Doc. 15 at 213.)

    *i. The IJ Applied the Correct Standard and Did Not Treat the Hearing as a Bond Redetermination Hearing*

First, Petitioner argues that the IJ failed to apply the correct legal standard because the IJ treated the hearing as a bond redetermination request governed by immigration law. In support, Petitioner cites to the IJ's invocation of her "extremely broad discretion in deciding whether to release a [noncitizen] on bond" and that she "may choose to give greater weight to one [*Guerra*] factor over others, as long as the decision is reasonable." (Doc. 15 at 15) (citing IJ Memo at 2.)[8]

---

[7] Petitioner has done so here by demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided. (Doc. 20 at 3-5). Also, the Court previously found that Petitioner had suffered irreparable harm because of his detention in its prior preliminary injunction order. (Doc. 14 at 17.) In any event, based upon the outcome here, it would make little sense to delay determination of this motion.

[8] In support of his assertion that the IJ treated the hearing as a bond redetermination request, Petitioner also cited a footnote in the IJ's order which emphasized Petitioner's ineligibility for a bond hearing pursuant to *Matter of Yajure Hurtado*, 26 I&N Dec. 216 (BIA 2025) (Doc. 15 at 15-16.) In *Matter of Yajure Hurtado*, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to section 1225(b)(2)(A). In the footnote, the IJ states "the Court need not and does not further address jurisdiction in this matter, as the Court denies bond on both danger and flight for the reasons described below." (Doc. 15-3 at 3; IJ Memo at 2, fn. 2.) Petitioner characterizes the IJ's statement as an error which "appear[ed] to have infected the IJ's findings regarding both dangerousness and flight risk." (Doc. 15 at 16.) The Court disagrees and declines to view it as anything more than a statement describing the different standards IJ's must follow in a typical bond redetermination hearing and clarifying that such standards have no bearing on the ultimate outcome in this matter. Furthermore, nothing in the order itself indicates that the IJ relied on *Matter of Yajure Hurtado* in any part of her analysis. Accordingly, the Court does not view this footnote as an attempt to circumvent or flaunt the Court's PI

Petitioner claims the IJ's invocation of discretion is contrary to the Constitution and is inconsistent with the Court's PI Order. Petitioner's claim is made notwithstanding the IJ's explicit acknowledgement of this Court's PI Order directing the immigration court to "conduct an individualized bond hearing in which the Department must establish "by clear and convincing evidence, that [Petitioner] poses a danger to the community or flight risk." (Doc. 15-3; IJ Memo at 1.) The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the correct legal standard," unless there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009).

The IJ appropriately began her analysis by invoking the due process standard for noncitizens at bond hearings as established by *Singh v. Holder*, 638 F.3d 1196, 1202 (2011) (holding that the government must prove by clear and convincing evidence that alien is a flight risk or a danger to the community to justify denial of bond). Furthermore, *Singh* expressly called for immigration judges to apply the factors set forth at *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A.2006) to determine whether noncitizens present a flight risk or danger to the community.

Though the IJ relied on *Guerra* for the proposition that an IJ may weigh factors so long as the decision is reasonable, *Singh* makes clear that such discretion is limited. *Singh,* 638 F.3d 1196 at 1206 ("Although an alien's criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered."). As discussed in greater detail below, the IJ did in fact consider both the recency and severity in making her dangerousness determination.

Notably, the same IJ in this case inserted the same generic boilerplate language regarding "her extremely broad discretion" in the bond hearing memorandum at issue in *Y.S.G. v. Andrews*, 2025 WL 2979309 (E.D. Cal. Oct. 22, 2025). In *Y.S.G.*, the court found that "the IJ's reference to broad discretion imported a legal standard at odds with the preliminary injunction," citing the heightened burden on DHS that "did not leave room for an added layer of agency discretion."

Order.

10

*Y.S.G.*, 2025 WL 2979309 at *9 (citing *Martinez v. Clark*, 124 F.4th 775 at 784). The court in *Y.S.G* found that IJ's statement that she applied the clear and convincing standard "functioned as 'lip service' to a heightened standard that the IJ did not then abide 'in [the IJ's] reasoning and decision.'" *Id*. (citing *Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016)).

The Court disagrees and finds that absent additional indications of abuse of discretion, the mere presence of such boilerplate language is not determinative as to whether of the IJ failed to apply the correct standard as mandated by this Court's PI order. Relatedly, the Court declines to infer noncompliance on the part of an IJ where there appears to be a good faith effort to comply with this Court's mandate. To be clear, this does not relieve the government of its obligation to meet the clear and convincing burden, nor does it permit IJs to rely on talismanic language in lieu of proper analysis.

### ii.    The IJ did not Improperly Shift the Burden to Petitioner

The Court now turns to Petitioner's claim that the IJ impermissibly shifted the burden of proof. Petitioner claims the IJ erred in determining Petitioner has the burden to present details regarding his asylum case and rehabilitation efforts in his bond hearing. (Doc. 15 at 213.) The materials before the Court show that the IJ acknowledged in her written decision that the government bore the burden of establishing by clear and convincing evidence that Petitioner was a danger to the community and a flight risk as mandated by this Court's order. (Doc. 15-3 at 2; IJ Memo at 1.) Though the "clear and convincing" standard applied, it did not relieve Petitioner of the burden of production of evidence to counter that presented by the government. After all, the government cannot be expected to know, for example, about Petitioner's sobriety efforts or any mental health treatment he may be receiving.

As to Petitioner's asylum application, the IJ noted that "[the] Court perceives that [Petitioner] will seek humanitarian protection in the United States in the form of asylum, withholding of removal, and protection under the Convention Against Torture . . . However, the Court is left entirely to speculate regarding the merits of his claims and his likelihood of success on the merits of those applications, as he has provided no meaningful evidence on this topic in the bonding proceeding." (Doc. 15-3 at 5-6; IJ Memo at 4-5.)

Petitioner does not demonstrate that the IJ failed to apply to correct standard of proof, nor does he demonstrate that the IJ improperly shifted the burden of proof. Thus, the Court concludes, based on the record before it, that the IJ applied the correct burden of proof in relation to Petitioner's bond hearing.

## C. Consideration of Probative Evidence

Petitioner next argues that the IJ committed reversible error by ignoring, failing to meaningfully consider, or misstating evidence in the record in respect to the issue of Petitioner's dangerousness and flight risk. (Doc. 15 at 23.) Petitioner points to six pieces of such "highly probative" evidence: (1) Petitioner's compliance with parole requirements and ICE check-ins for the past four years of his release on bond, (2) Petitioner's compliance with rules and requirements set forth by state authorities following his DUI arrest, (3) Petitioner's procurement of legal counsel to assist "his case," [9] (4) Petitioner's maintenance of gainful employment and ties to the community over the course of two years, (5) Petitioners' rehabilitation efforts and commitment to a mental health plan following his DUI arrest, and (6) the imminent birth of his first child. (Doc. 15 at 23.) Petitioner also claims that the IJ mischaracterized a quote from a declaration provided by Petitioner's partner. (Doc. 15 at 18.)

As a threshold matter, the Court notes that an IJ's failure to cite every piece of evidence in the record does not amount to clear error. *See Larita-Martinez v. INS,* 220 F.3d 1092, 1096 (9th Cir. 2000). *See Cole v. Holder*, 659 F.3d 762, 772 (holding that only "potentially dispositive testimony and documentary evidence" must be specifically addressed). "When nothing in the record or the BIA's decision indicates a failure to consider all the evidence," a court will rely on the agency's statement that it considered all the evidence before it. *See Cole*, 659 F.3d at 771. But when there is an indication that something is amiss, like if the BIA ''misstat[es] the record'' or ''fail[s] to mention highly probative or potentially dispositive evidence,'' courts do not credit its use of a ''catchall phrase'' to the contrary. *Id*. at 771-72.

The memorandum explicitly states that the IJ "carefully consider[ed] all the evidence

_____

[9] It is unclear to this Court if Petitioner's reference to "his case" refers to Petitioner's current removal proceedings at issue in this instant motion, his pending asylum application, or both.

presented." (Doc. 15-3 at 3.)  In his current motion, Petitioner repeatedly emphasizes that he submitted "over 100 pages" of supporting evidence. However, district courts do not demand that an IJ cite every item of evidence in reaching their conclusions. *See Larita-Martinez,* 20 F.3d 1092 at 1096. With respect to the allegedly overlooked evidence mentioned above, Petitioner does not explain how this evidence is "highly probative or potentially dispositive" such that it would constitute reversible legal error were it not considered. For instance, Petitioner cites no authority holding that a noncitizen's compliance with immigration reporting or the fact of an impending birth represent "highly probative or dispositive" pieces of evidence in the face of strong evidence of a serious crime, such as a DUI.

As to Petitioner's post-DUI rehabilitation (completion of DUI classes, payment of fees, and the Sheriff's Work Program), the IJ referenced Petitioner's completion of a program at the "Sitike Counseling Center" but noted that "the Court is largely left to speculate as to the nature of this program, as the documentation does not elaborate." (Doc. 15-3 at 3; IJ Memo at 3.) The IJ's recognition of gaps or ambiguity in the evidence shows that the rehabilitation materials were not "highly probative or dispositive" as to dangerousness or flight risk.

Petitioner also claims the IJ mischaracterized evidence, interpreting his fiancé's letter to suggest he "apparently continues to drink," despite noting that, after his DUI, "[w]hen he would have a couple of beers, he would not drive." (Doc. 15 at 18.) The entire quote from Petitioner's partner reads as follows:

> I understand that [Petitioner] has had prior DUI and an open container violation. I have gotten to know those incidents, and I have seen him take full responsibility and make changes. Until I found out that I was pregnant we would occasionally have a beer or two with dinner or with friends/family. To my knowledge, he has not engaged in any drinking and driving since the arrest. When he would have a couple beers, he would not drive. [Petitioner] has worked hard to stay on the right path. He has become more focused, dependable, and committed to making better choices. I believe he has truly learned his lesson and is determined not to repeat past mistakes.

(Doc. 15-3 at 51.) Petitioner interprets this statement to mean that he stopped drinking once he learned of his partner's pregnancy. (Doc. 15 at 18.) The Court acknowledges the ambiguity in Petitioner's fiancé's statement but does not find the IJ's interpretation to be clear mischaracterization or misrepresentation of the facts. The statement, "until I found out that I was

13

pregnant we would occasionally have a beer or two with dinner or with friends/family," could also reasonably be read to mean that the couple drank together until she became pregnant, at which point *she* stopped drinking. The IJ's interpretation of the fiancé's statement is further bolstered by the fact that nowhere else in the record did Petitioner mention sobriety prior to his detention. Ultimately, the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"). Accordingly, the Court finds that Petitioner has not demonstrated that the IJ failed to comply with the preliminary injunction.

**D. Sufficiency of Evidence to Support IJs' Findings**

Petitioner challenges the sufficiency of the evidence supporting the immigration judge's bond determination rather than the constitutionality of the process by which that determination was reached. That is not a question for this Court. In issuing the PI, the Court ordered a process, not an outcome. Complaints about the conclusion the IJ reached must be presented through the normal immigration appeal process.

**V. CONCLUSION AND ORDER**

For the foregoing reasons, Petitioner's motion to enforce the Court's earlier order is **DENIED**.

IT IS SO ORDERED.

Dated: __**January 29, 2026**__

UNITED STATES DISTRICT JUDGE

14